## Richmond.

LEAH B. FARRAR, AND OTHERS, v.
WALLACE H. PEMBERTON.

March 20, 1930.

Absent, Hudgins, Gregory and Browning, J., J.

The opinion states the case.

*Froe, Capehart & Miller, James T. Carter* and *Sands, Williams & Lightfoot,* for the plaintiffs in error.

*David Meade White,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

Wallace H. Pemberton brought his action of eject-

ment against Leah B. Farrar, to recover the possession of the premises known as No. 610 north First street, Richmond, Virginia. The executors under the will of D. J. Farrar, deceased, upon their motion, were made parties defendant along with Leah B. Farrar. There was a trial by jury which resulted in a verdict for the plaintiff. The court entered judgment upon the verdict of the jury and to that judgment this writ of error was awarded.

On the 22nd day of April, 1887, Madalen A. Peyronnet executed her last will and testament, and on the 22nd day of January, 1891, departed this life in the city of Richmond. The third clause of the will, which will be set forth later, is the only clause involved in this litigation.

The evidence discloses that Nellie Eugenia Pemberton, named as a devisee in the third clause of the will, was at the date of its execution seventeen years of age; that on the second day of June, 1891, she intermarried with one Robert Keith; that on the 10th day of August, 1893, she conveyed the property herein involved to Allen G. Collins; that on the 28th day of November, 1893, Collins conveyed the property to Leah B. Farrar in fee simple; that Leah B. Farrar conveyed the same to her husband, Daniel Farrar, in the year 1919; and that, by a will probated the 16th day of March, 1923, Daniel Farrar devised the property involved to his wife for life, remainder to his children.

During the progress of the trial plaintiff introduced as a muniment of title the will of Madalen A. Peyronnet, and it therefore became necessary for the court to construe said will in order to determine the rights of the parties thereunder. The court was of opinion, and so held, that Wallace H. Pemberton was the fee simple owner of the property, and the jury were accordingly

instructed to find a verdict for the plaintiff. This action of the court constitutes the sole assignment of error.

The reasons for the decision of the lower court are fully set forth in the opinion of Honorable Frank T. Sutton, which is adopted as a part of this opinion and is as follows:

"The case turns upon the construction of the third clause of the will of Madalen A. Peyronnet, which reads:

" 'Third: I give the house and lot on the west line of First street, No. 610, purchased by me from Gilbert J. Hunt, fronting on First street twenty-one feet, and running back between parallel lines, one hundred and thirty-five feet, in fee simple to Nellie Eugenia Pemberton, if living, or to her issue. And if the said Nellie Eugenia Pemberton shall die without issue, then the said property shall pass in fee simple to Wallace Henry Pemberton, if living at the death of said Nellie Eugenia, and if he is not then living, the said property shall pass in fee simple to James Peyronnet Pemberton.'

"The concluding paragraph of item sixth of the will reads as follows:

" 'Should the remainder of the property devised in the third clause of this my will fail to vest in any of the persons named therein by reason of the death of all of them, then the said property shall be given to the children of Katharine Peyronnet widow of my son Lucien Peyronnet. In no event is James T. Pemberton the husband of Madalen V. Pemberton to have any share in my estate, by the death of his children taking under this will or otherwise.'

"At the trial the will of Madalen A. Peyronnet, dated April 22, 1887, and probated January 22, 1891, containing the above provisions, was duly proved by

an attested copy. It was also proved that at the date of the will Nellie Eugenia Pemberton was unmarried and without issue, that at the death of the testatrix she was living but still without issue, and that she afterwards died without ever having had issue, and that Wallace Henry Pemberton survived the said Nellie Eugenia Pemberton.

"It was also proved that Nellie Eugenia Pemberton was a special object of the testatrix's affection.

"The above facts were uncontradicted. The court thereupon instructed the jury as follows:

■ " 'The court instructs the jury that under the last will and testament of Madalen *E.* Peyronnet, which was probated January 22, 1891, she gave the house and lot, No. 610 north First street, to Nellie Eugenia Pemberton in fee simple, if living, or to her issue, and provided that if the said Nellie Eugenia Pemberton should die without issue, then the said property should pass in fee simple to Wallace Henry Pemberton, if living at the death of said Nellie Eugenia Pemberton. The court further instructs the jury that under said will the said Nellie Eugenia Pemberton, if living, took a defeasible fee in said property upon the death of the testatrix; and if the jury believe from the evidence that Nellie Eugenia Pemberton afterwards died without issue and that Wallace Henry Pemberton survived her, then upon the death of the said Nellie Eugenia Pemberton the said property passed to Wallace Henry Pemberton in fee simple, and the jury must find for the plaintiff the fee-simple title to the property described in the declaration.'

■■ "In the construction of wills adjudicated cases afford little help, inasmuch as no two wills are entirely alike. They are of aid, however, in settling certain

general rules of construction, but even then they are resorted to merely as aids to determine the meaning of an obscure will.

"Before resorting to these rules of construction the testator must have so expressed himself that by giving to his words a natural and usual meaning his intent is obscure.

■ "In Wills and Administrations, by Judge T. W. Harrison, section 194 (2) reads: '* * * If the testator uses words which are capable of a reasonable interpretation as they are written, they must be so taken though the inference of intention be more or less strong that he intended to make a disposition of the property in a particular way but overlooked a particular event or matter.'

"Or, as said by another authority: 'The testator must express his intention or use such language as·will enable the court to ascertain what his intention is in order to make it effectual.'

■ ■ "All parts of the will must be read together to get the true intent of the testator. The testatrix by the last clause of the sixth item of her will left no doubt that in her scheme of distribution of her property, James T. Pemberton (the father of Nellie Eugenia Pemberton, Wallace Henry Pemberton and James Peyronnet Pemberton) was to have no part 'by the death of his children taking under this will or otherwise.'

"As the statute of descents was at the date of this will and the death of the testatrix, upon the death of a child without issue and intestate, that child's father inherited his or her real estate (to the exclusion of the mother, brothers and sisters).

"The death of Nellie Eugenia Pemberton at any time intestate and without issue would have passed to

her father, James T. Pemberton, all real estate she owned in fee simple (not defeasible).

"The last clause of item sixth of the will showed a fixed intent on the part of the testatrix to prevent this.

"It could only be prevented by a provision in her will that the fee simple title she gave Nellie Eugenia Pemberton was nevertheless defeasible upon her death without issue surviving her.

■ "The only sure way to disinherit an heïr is to give the property to another.

"If Nellie Eugenia Pemberton's title was *defeasible* upon her death without issue, her father could not inherit from her; and the testatrix said in certain terms that he (J. T. Pemberton) was in no event to have part of her estate by the death of his children (one of whom was Nellie Eugenia Pemberton).

"It is plain from the language of item third of the will that Nellie Eugenia Pemberton, if living at the death of the testatrix, was given a fee simple title to the property. She was living at that time, and took such estate. The testatrix was careful to provide that if she was not living then her issue should take. (The possibility of James T. Pemberton, grandfather of such issue, heiring from them under the then state of the law would be *very* remote.)

■ "The testatrix's next sentence is not in words of substitution, as if it commenced with 'But if,' etc. She says, 'And if,' etc., meaning in addition to what she had already provided for. She had given it to Nellie, if living. She had given it to Nellie's issue if Nellie were dead at that time leaving any. And the testatrix next proceeds to govern the disposition of this property if Nellie should die at any time without issue. Her words, are, 'And if the said Nellie Eugenia Pemberton shall die without issue, * * *.' Why should the court

supply after 'without issue' the words 'before I do'? The testatrix has used no such words. The court must not supply words in a will except in the plainest case when it is necessary to carry out the manifest intention of the testatrix. As said in Harrison on Wills and Administration, section 194, before the court should do so: 'There must be so clear an intent that the contrary intent cannot be supposed. If there is a rational construction of the words as they are written, that construction must be given them.'

■ "The testatrix has said that in event Nellie should die without issue, 'then the said property shall pass in fee simple to Wallace Henry Pemberton if living at the death of said Nellie Eugenia.'

"He was living at her death without issue. This was the plain and unambiguous direction of the testatrix. What is plain and clear needs no construction. Why should the court circumscribe or limit the period (by supplying words) when the testatrix did not. The testatrix nowhere said that, in order that Wallace Henry Pemberton should take, Nellie should have died before her (the testatrix). In making this provision of her will, the plain words of the will put no limitation on the time of Nellie's death. Where the testatrix has not limited the time the court should not. To supply such words would be making a new will for her.

■ "In arriving at the above views the court has not been unmindful of that rule of construction which says a plain gift in one part of the will should not be cut down or diminished by another provision unless such latter provision is equally as clear and plain. Nor has the court overlooked that rule of construction which favors early vesting of an estate.

"In this will the divesting clause is equally as clear

as the language in the earlier portion of the will giving the land to another. It divests the estate in fee simple to Wallace Henry Pemberton, provided he was alive at the death of Nellie. The defendants ask the court to construe this divesting clause as having no effect unless Nellie died before the testatrix. The testatrix did not so limit the effect of this clause and so the court cannot.

"It is only when the time of the vesting of an estate is expressed in obscure or ambiguous terms that the court can call to its aid that rule that favors the early vesting of an estate. That situation was not presented to the court by the language of the will in this case.

"It is always the privilege of the testatrix to fix the period of the vesting to suit herself. Had the testatrix used only the words, 'to Wallace Henry Pemberton if living,' and stopped, there would be much force to the argument advanced for the early vesting of the estate, and that it could only be cut down by a divesting clause equally as clear. But the testatrix was not satisfied with that ambiguous expression, and to make her intent clear she needed and used additional words to render that intention certain. Effect must be given to every word of the testatrix unless it leads to absurd results. She might easily have added the words 'at my death' but she did not. Instead she chose to add the words 'at the death of Nellie Eugenia.' The testatrix had the choice of these two expressions, and the whole framework of the will shows its author possessed a faculty of expression above the average.

"The court should not depart from the plain meaning of words to create an ambiguity that it may later construe those words by certain recognized rules of

construction. These rules are to be invoked only when the words of the testator, standing alone, create an ambiguity."

The conclusions of the trial court are, in our opinion, fully supported by the decisions of this court.

A question similar, if not identical with the question involved, arose in the case of *Elys* v. *Wynne*, 22 Gratt. (63 Va.) 224. Elkhanah Wynne, by will, devised certain lands to his daughter, Sarah Dougherty. The devise was as follows:

"6thly. I give and bequeath to my daughter, Sarah Wynne, now Sarah Dougherty, the tract of land purchased of George R. Ely, and joining Alexander Ely and Charles Hambler, to her and the heirs of (her) body; but should the said Sarah Dougherty die without heir, as above mentioned, my wish is that the said land shall return to my other heirs, and be sold, and the moneys arising from such sale to be equally divided among all my heirs."

Mrs. Dougherty sold the said land to James A. G. Ely, and conveyed it to him with covenants of general warranty. She died without issue, and, after her death, the heirs of Elkhanah Wynne brought an action of ejectment and recovered the land. That judgment was affirmed by this court. The court, speaking through Moncure, P., held that the case was governed by the act of 1819, which took effect January 1, 1820; that Sarah Dougherty was seized of an estate in fee, defeasible by her death without issue living at her death; that if she had left issue living at her death, the estate in fee would thenceforward have been indefeasible; that upon the death of the said Sarah Dougherty without leaving issue, the title to the said land vested in the heirs of Elkhanah Wynne, and that they were entitled to it.

In *Daniel* v. *Lipscomb,* 110 Va. 563, 66 S. E. 850, Judge Whittle cites with approval *Elys* v. *Wynne.*

In *Larew* v. *Larew,* 146 Va. 134, 135 S. E. 819, 820, the question before the court was the true construction of the third clause of the will of Samuel L. Larew, Sr., deceased. The testator gave property to his wife during her life and provided: "* * * at her death to go to my beloved son, Samuel L. Larew, Jr., and his children; and if he should die without surviving heirs, then I direct my said executor to reduce the whole of my estate to cash and pay the same over to the children of my brothers and sisters then living, in equal shares." Prentis, P., speaking for the court, said: "On the other hand, the appellees' contention is that Samuel L. Larew, Jr., is the owner of a defeasible fee in the real estate devised, which fee may be defeated in case he should die without leaving issue; * * *. The trial court adopted this construction of the will * * *. Our conclusion then is that the trial court correctly held this devise to Samuel L. Larew, Jr., to be an estate tail, which by statute is created a fee simple; and that it was also correct, because the statute so allows, in holding it to be a defeasible fee—that is, a fee which may be defeated upon the failure of the issue of Samuel L. Larew, Jr. (Code, section 5150.)"

Section 5151 of the Code of 1919 seems to us to bear directly upon the question. There we read: "Every limitation in any deed or will contingent upon the dying of any person without heirs, or heirs of the body, or issue, or issue of the body, or children, or offspring, or descedant, or other relative, shall be construed a limitation, to take effect when such person shall die not having such heir or issue, or child or offspring, or descendant, or other relative, as the case may be, living at the time of his death, or born to him

within ten months thereafter, unless the intention of such limitation be otherwise plainly declared on the face of the deed or will creating it."

With the language of the statute in mind, coupled with the holdings of this court, our conclusion is that the limitation to Wallace H. Pemberton was contingent upon Nellie Eugenia Pemberton dying without issue, and that the language of the will has reference to the death of Nellie Eugenia and not to the death of testatrix.

There is no error in the judgment of the trial court and it must be affirmed.

*Affirmed.*