# Richmond

BERTHA NEWCOMB BIRD, ET ALS. V. L. M. NEWCOMB, JR.,
AN INFANT, ET ALS.

April 28, 1938.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning
and Eggleston, JJ.

The opinion states the case.

*Willcox, Cooke & Willcox,* for the appellants.

*Alfred Anderson, L. V. Snell* and *W. L. Carleton,* for the appellees.

GREGORY, J., delivered the opinion of the court.

The lower court was asked to construe the fifth clause of the will of Leonard M. Newcomb. That clause reads as follows:

"FIFTH: I direct that all of my stock-holdings in whatever corporation, that I may be possessed of, together with all other personal property, shall be turned over to the Trustees with full power to act, to continue any business holdings that I may be possessed of at the time of my demise as long as the business is a profitable concern and shows a reasonable return on the investment. In the event it becomes necessary to dispose of any such interest the Trustees shall have full power to do so and to reinvest such funds in proper securities under the trust laws of the State. This, however, does not include the disposal of any stock that I am possessed of in The Old Point National Bank of Phoebus, Virginia, and the Merchants National Bank of Hampton, Virginia, but the Trustees are to hold this stock in trust with my brother, William B. Newcomb as a Co-Trustee, with the right to

act and vote this stock and represent it on any Board of Directors to which he might be elected, all for the benefit of my son, Leonard M. Newcomb, Jr., who is to become possessed of all of bank stock holdings when he reaches the age of thirty years. I direct that the proceeds of my Insurance Policy No. 575522, with the Equitable Life Assurance Society, shall be used in the payment of inheritance tax, unpaid income, etc., insofar as possible, the remaining amount, if any to revert back into the corpus of my estate."

 Bearing in mind that the elementary principle in construing wills is that the intention of the testator shall govern unless inconsistent with rules of law and that it must be ascertained from the whole will, we have given consideration to the will as a whole. We set forth the ninth, eleventh, and fifteenth clauses as they are particularly pertinent and briefly refer to the other clauses to aid us in determining what the testator meant in the fifth clause.

The ninth clause is as follows:

"NINTH: I direct that in the event of the death of any of my children without legal issue that their portion of the estate or income shall go to the survivor or survivors of my children for the time being, as set forth in the previous items in this my last will and testament, and that their share and distribution of the estate shall be made to the survivor or survivors, share and share alike, providing, however, that if the daughters are survivors that the balance of my estate, not previously designated for distribution, shall be held in trust for them and the income paid to them as long as they shall live with their right to will their share to their legal issue."

The eleventh clause is as follows:

"ELEVENTH: I direct that at the death of my wife, and after my son, Leonard M. Newcomb, Jr., has reached the age of thirty years, or thereafter, that a distribution of the balance of the estate be made, my son, Leonard M. Newcomb, Jr., to receive one-third ($\frac{1}{3}$) of the re-

maining estate, my daughter, Betty Jane Newcomb, to receive one-third (⅓) of the remaining estate, my daughter, Bertha E. Newcomb Bird, to receive one-third (⅓) of the remaining estate. In the event of the death of either one of them without issue their share to *then* be disposed to Leonard M. Newcomb, Jr., my son, outright. If any child should die with issue, this child's share shall be paid to the issue, or if more than one, to the several issue pro rata until they become 21 years of age when the distribution of this share shall be made to such issue."

The fifteenth clause is as follows:

"FIFTEENTH: I direct that the Trustees invest the earnings from the estate as they are received, the cash balance of such earnings is not to exceed Five Thousand Dollars ($5,000.00) before investing."

Other clauses of the will provide for maintaining the home for the wife, son and unmarried daughter and that the house furnishings and other personal belongings in the home should remain there; that all of the real estate other than the home be placed in a separate trust and should be rented so as to create the largest income therefrom and power was given the trustees to sell the property. He provides that $200 should be paid to his widow each and every month, this amount to be derived from the income, if sufficient, but if insufficient it should be derived from the sale of certain of his personal property. He further provides that $100 per month be paid to the Phoebus Methodist Church and that $100 should be paid to his sister, Martha Jane Gates. Both of these later gifts were to be paid from income. He directed that the trustees should accumulate the income into the corpus of the trust if any was left after the payment of the legacies, and he appointed the Old Point National Bank of Phoebus, and a brother, William B. Newcomb, trustees until such time as his son, Leonard M. Newcomb, Jr., should become twenty-one years of age. At that time the son is to be appointed a co-trustee.

The lower court construed so much of the fifth clause as related to the bank stock. It held that "said will provides a specific legacy to Leonard M. Newcomb, Jr., of the said bank stock, which stock is to be held by the said trustees for Leonard M. Newcomb, Jr., to be turned over to him, together with any stock dividends thereon, when he reaches the age of thirty years, and that the income or cash dividends from said bank stock is to be paid to the legal guardian of the said Leonard M. Newcomb, Jr., as it is received, and after he reaches the age of twenty-one years, said income or cash dividends to be turned over to him personally; (but in the event of the death of the said Leonard M. Newcomb, Jr., before he reaches the age of thirty years, said bank stock shall pass in accordance with the terms of the said will of Leonard M. Newcomb, Sr., deceased)."

The position of the appellants is that Leonard M. Newcomb, Jr., under the fifth clause of the will, is not entitled to the dividends from the bank stock until he reaches the age of thirty and that should he die without issue before he attains that age, he would not have been entitled to anything under the bequest,—that the bequest of the bank stock was a contingent one and at most a defeasible fee.

The position of the appellee, Leonard M. Newcomb, Jr., is that the bequest to him in the fifth clause is an indefeasible specific gift entitling him to the income or cash dividends from the bank stock, to be paid his legal guardian, and that after he attains the age of twenty-one the income or dividends are to be paid to him personally. He objects to the last part of the decree which reads as follows: "But in the event of the death of the said Leonard M. Newcomb, Jr., before he reaches the age of thirty years, said bank stock shall pass in accordance with the terms of the said will of Leonard M. Newcomb, Sr., deceased."

Leonard M. Newcomb, Jr., contends that he is now vested with complete title to the bank stock but with

the possession of it postponed until he arrives at thirty years of age.

The testator left surviving him his wife, an unmarried infant daughter, a married daughter and an unmarried infant son. He desired that the home place be maintained as a home for his wife and the two infant children, Leonard M. Newcomb, Jr., and Bettie Jane Newcomb. Mrs. Bird, the married daughter, was not remembered by the testator in this provision. It could be inferred that she was left out because she was married and probably had her own home.

██ The testator intended to prefer his son in the will. This fact is clearly established by the will itself. He gives to his widow and daughters life estates while he gives his son the bank stock, "all for the benefit of my son," who is to become "possessed of" all of the bank stock holdings when he reaches the age of thirty years without any limitation. Only the possession is postponed. In the eleventh clause he provides that if the daughters die without issue their interests go to the son "outright," but if the son dies without issue his interest would go to the daughters only for their lives. The testator had the right to prefer his son as he has done.

██ A consideration of the entire will discloses that the testator intended to create two separate trusts; one, a general trust for the benefit of the widow and the three children, and the other, a special trust for the sole benefit of his son, Leonard M. Newcomb, Jr. Into the former trust the testator placed all of his personal property except the bank stock and all of his real estate except his home, which was also to go into the trust after the death of his widow and after the youngest child became twenty-one years of age. The investment of the general trust was to produce a sufficient income to enable the trustees to pay the monthly sums to the beneficiaries and to maintain the home. This trust was to terminate in accordance with the eleventh clause upon "the death of my wife, and after my son, Leonard M. Newcomb, Jr., has reached

the age of thirty years, or thereafter." Until that time the income derived from the general trust, except what is used to pay the sums to the wife, the church and the sister, and except what is used to keep up the home, is to accumulate and be converted into the corpus.

Into the special trust the testator placed the stock of the two banks, "all for the benefit of my son * * * who is to become possessed of all of bank stock holdings when he reaches the age of thirty years." The sole purpose of this trust was that the trustees would simply hold the stock, vote it and represent it on any board of directors, "all for the benefit of my son" and for the benefit of no other person. This trust is not charged with paying any other legacy nor with keeping up the home. It is not only for a different purpose but also terminates at a different time. It terminates unconditionally when the son attains the age of thirty years whether the widow is living or not, while the other general trust terminates when the widow dies and the son reaches thirty years of age or thereafter. The income from the general trust is appropriated for express and specific purposes while the income from the special trust is not expressly appropriated for any purpose. It naturally follows the ownership. In these respects there is a substantial difference between the trusts.

Referring to the fifth clause, the language, "all for the benefit of my son" is all inclusive. In Webster's New International Dictionary, Second Edition, the word "benefit" is defined as meaning "Whatever promotes welfare; advantage; profit," and also as "A pecuniary advantage or profit."

In *Stowell et als.* v. *Stowell's Ex'r,* 59 Vt. 494, 8 A. 738, 59 Am. Rep. 748, the word "benefit" used in a will was defined thus: " * * * it was for her *advantage,* her *profit,* her *gain,* her *account,* her *interest.* The word 'benefit' and its synonyms mean more than simple support; they mean any purpose to which the absolute owner of property can devote it; and, given for that purpose, they mean

that Mrs. Stowell had unlimited power to dispose of it at her pleasure."

In *Paine* v. *Forsaith*, 86 Me. 357, 30 A. 11, 12, the court construed the words, "the benefit of the $10,000," appearing in a will, to mean more than income on that amount; that the word "benefit," unrestricted, means the whole benefit and the entire beneficial interest. The court said: "Where property is given * * * to certain individuals to be used, appropriated and applied for their benefit, * * * they thereby become, in effect, the absolute owners of it and may exercise all the rights belonging to them in that relation."

In *Winthrop Co.* v. *Clinton et al.*, 196 Pa. 472, 474, 46 A. 435, 79 Am. St. Rep. 729, the court said that a fund to be paid to a *cestui que trust* for his own use and benefit is absolutely his own. (See also, 7 C. J., pages 1135 and 1136).

The right of Leonard M. Newcomb, Jr., to the unqualified benefit of the bank stock is the right to the stock itself. The absolute ownership of the stock is vested in him by the fifth clause. When he reaches thirty years of age the possession will pass to him. If he dies intestate before then, his heirs will inherit it. The bank stock having vested in Leonard M. Newcomb, Jr., the income or dividends arising therefrom belong to him also. These follow the ownership of the stock.

The limitations found in the ninth and eleventh clauses of the will only apply to the remainder of the estate after the bank stock is taken therefrom. In other words it applies to the property placed in the general trust and not in the special trust.

The same is true in regard to the fifteenth clause which provides for the investment of the earnings. This has no application to the income or dividends accruing from the bank stock. It means the investment of the earnings derived from all property other than the bank stock.

In the ninth clause the testator uses this language, "the balance of my estate not previously designated for distribution." The bank stock had been previously designated for distribution in the fifth clause. The use of the word "balance" indicates that something had been previously carved out of the estate, and that the testator was speaking in the ninth clause of only what was left,—the balance or the residue.

The same is true in respect to the eleventh clause. There he distributes the "balance of the estate." Leonard M. Newcomb, Jr., is to receive one-third of "the remaining estate." Bettie Jane is to receive one-third of "the remaining estate," and Bertha E. Newcomb Bird is to receive one-third of "the remaining estate." The "balance of the estate," as previously stated, means what was left of the estate after the bank stock had been taken out of it and after the legacies had been paid and the expense of maintaining the home had been provided for. This meaning is emphasized by the testator when he expressly provided for the distribution of his "remaining estate" to the three children giving each a one-third interest in what remains.

In our opinion the interpretation we have placed upon the fifth clause of the testator's will ex-presses the intent of the testator which has been arrived at from the will as a whole. In our examination of the will we have borne in mind the well established rule of construction that all devises and bequests are to be construed as vesting at the testator's death, unless the intention to postpone the vesting is clearly indicated by the will. When the meaning of a will is doubtful the court will incline to the construction which would regard the interest as vested. Harrison on Wills and Administration, vol. 1, section 262.

In the same work, vol. 1, section 267, is found the Virginia rule for determining whether the interest is vested or contingent. It reads as follows: "When a future time for the payment of a legacy is defined by the

will, the legacy will be vested or contingent according as, upon construing the will, it appears whether the testator meant to annex the time to the payment of the legacy or to the gift of it. In ascertaining the intention of the testator in this respect, Courts of Equity have established two rules of construction: First, that a bequest, payable or to be paid at or when the beneficiary shall reach the end of a certain determinate term, confers on him a vested interest immediately on the testator's death, as *debitum in praesenti solvendum in futuro,* and transmissible to his executors or administrators; for the words payable or to be paid are supposed to disannex the time from the gift of the legacy, so as to leave the gift immediate, in the same manner, in respect of its vesting, as if the bequest stood singly and contained no mention of time. A second rule of construction established by the authorities is, that if the words 'to be paid' or 'payable' are omitted and the legacies are given say at twenty-one or if, when, in case, provided the legatees attain twenty-one or any other certain definite period in the future, these expressions annex the time to the substance of the legacy, and make the legatee's right to it depend on his being alive at the time fixed for its payment. Consequently if the legatee happens to die before that period arrives, his personal representative will not be entitled to the legacy. While these two rules of construction seem well established, there is still another, which is the all controlling one and which explains and limits to their proper application the various exceptions and refinement of distinctions to be found in the cases. It is this, the intention of the testator, as appearing from the whole will, that must predominate over all technical words and expressions."

See also, *Sellers' Ex'r* v. *Reed,* 88 Va. 377, 13 S. E. 754, and *Major's Ex'r et als.* v. *Major's Adm'r,* 32 Gratt. (73 Va.) 819; *Steinway* v. *Steinway,* 163 N. Y. 183, 57 N. E. 312; and *Equitable Guarantee & Trust Co.* v. *Bowe et al.,* 9 Del. Ch. 336, 82 A. 693.

The decree complained of will be amended so as to vest the absolute title to the bank stock in Leonard M. Newcomb, Jr., and to vest in him any and all dividends or income that have been or may be derived from said stock, but possession of said stock is not to be delivered to him until he is thirty years of age. In other respects the decree will be affirmed.

*Amended and affirmed.*