# Richmond

## LOUIS A. VOIGT, AN INFANT, ETC. v. MARY ANNE SELANDER, ET AL.

March 13, 1950.

Record No. 3603.

Present, All the Justices.

The opinion states the case.

*C. E. Hunter* and *Charles D. Fox, Jr.*, for the appellant.

*W. Warren Dickerson* and *Morris L. Masinter*, for the appellees.

STAPLES, J., delivered the opinion of the court.

This is a suit in equity to obtain a judicial construction of the following provision in the will of Louis Voigt, Jr.:

"After my debts and funeral expenses are paid, I give, devise, will and bequeath all my property, real, personal and mixed, wheresoever situated, which I may possess or have right, title or claim to at the time of my death, to my beloved wife Lena Moser Voigt, during her natural life and widowhood, with full power to her during her widowhood to hold, use, sell or dispose of the same or any part thereof, without any liability on the part of the purchaser to look to the application of the purchase money and for my said wife to apply such part of the proceeds of any such sale for her own and our children's support and maintenance as she may deem necessary, and, in event my said wife should marry again, then one-third of my remaining estate and the remaining proceeds of such part as she may have sold under the power aforesaid, shall belong to her absolutely and the other two thirds of my remaining estate shall be divided equally among my children, the descendants of any deceased child to take in place and stead of any deceased parents 'per stirpes' and not 'per capita', and if my wife shall depart this life without having married again, then my said estate shall be equally divided among my children in the manner aforesaid."

The will was executed June 9, 1904, and was probated February 5, 1932, about twenty-eight years thereafter.

The testator was survived by his widow, Lena Moser

Voigt, and a son, Louis A. Voight, an infant daughter having predeceased him unmarried and without issue.

The son, Louis A. Voigt, died July 11, 1947, during the lifetime of his mother, Lena Moser Voigt, who died in December, 1947. By his will the son gave and bequeathed one-third of his personal estate to his widow, Virginia Upson Voigt, and the sum of $100 to his son, the appellant. The remainder of his estate was left in trust. One-third of the income from the real estate, it was provided, should be paid by the trustee to his widow, and the remainder of the income from the real estate and personal property held in trust should be paid to his daughter, the appellee, now nineteen years of age, for her support and maintenance until she becomes thirty years of age, at which time the trust is to be terminated and she shall be entitled to the entire corpus thereof. The will further provided that should his daughter, the appellee, die before the vesting of the corpus of the trust, then the trust shall continue for the benefit of his son, the appellant, now thirteen years of age, subject to the same terms and conditions.

It was contended on behalf of the appellant in the court below, and is contended here, that the widow of the first testator, Lena Moser Voigt, took a fee simple under the doctrine of *May* v. *Joynes*, 20 Gratt. (61 Va.) 692, because she had the absolute power to dispose of and consume the corpus of the estate, and hence the limitation over to said testator's son, Louis A. Voigt, was void for that reason. It is insisted that this case does not come within the provisions of section 5147 of the Code of 1919 because that section applies only to cases where the beneficiary takes a life estate, and since the interest of Lena Moser Voigt was restricted to her widowhood she did not take a life estate within the meaning of that section. Therefore, it is argued, the second testator, the son, Louis A. Voigt, took nothing under his father's will and none of his father's estate passes under his will in favor of the appellee, but such property

passes by inheritance from their grandmother, Lena Moser Voigt, to the appellant and appellee in equal shares.

The applicable language of section 5147 of the Code of 1919 (Code 1950, section 55-7) is as follows:

"If any interest in or claim to real estate or personal property be disposed of by deed or will for life, with a limitation in remainder over, and in the same instrument there be conferred expressly or by implication a power upon the life tenant in his lifetime or by will to dispose absolutely of said property, the limitation in remainder over, shall not fail, or be defeated, except to the extent that the life tenant shall have lawfully exercised such power of disposal."

It is contended on behalf of the appellee, Mary Anne Selander, that her grandmother, Lena Moser Voigt, took a life estate under the will of her grandfather, Louis Voigt, Jr., and that her father, Louis A. Voigt, at the time of the death of her grandfather, took a vested remainder in all of the property of his estate, which was not disposed of during her lifetime by the life tenant, Lena Moser Voigt. This position of the appellee was sustained by the able judge of the Hustings Court, who held that "the will of Louis Voigt, Jr., created a life estate in his widow, such estate being subject to be divested by her remarriage, which never occurred, and that Louis A. Voigt took a vested interest thereunder. Consequently, section 5147 of the Code would be applicable and the estate of Louis Voigt, Jr., not disposed of by his widow in her life time passes in accordance with the terms of his (Louis A. Voigt's) will."

█ It is well established by the decisions of this court that, in order for the remainder over to be valid where the first-taker is given the power of complete disposition of the estate, the gift of the first-taker must be an express estate for life as provided in the above quoted section of the Code. See *Mowery* v. *Coffman*, 185 Va. 491, 39 S. E. (2d) 285, where our decisions on this question are reviewed at length. That this is the controlling principle here is not disputed,

either in the briefs or oral arguments of counsel for the respective parties.

We must determine, therefore, whether the gift to Lena Moser Voigt "during her natural life and widowhood" was a life estate within the meaning of the statute. The will provides that upon her marriage the life estate would terminate and she would receive one-third of the estate in fee simple and the unexpended remainder would be equally divided among the testator's children. Under these provisions, the life estate could be terminated by the happening of either of two events; first, by the marriage of the life tenant, and, second, by her death. Did the fact that Lena Moser Voigt, by her voluntary act of marriage, could terminate her estate for life deprive it of the character of a life estate within the meaning of the statute? We think not. It was within the power of the life tenant to enjoy the estate during her entire lifetime. By refraining from a subsequent marriage, she actually did enjoy it for that period. Life estates with limitation over may ordinarily be terminated by the conveyance and transfer of the life tenant's interest to the vested remainder-man, thus cutting short the life estate and vesting said remainder-man with a fee simple title. It cannot be said, therefore, that Lena Moser Voigt's power to voluntarily terminate her life estate by marriage had the effect of converting it into a fee simple interest. It follows that, under the provisions of section 5147, the remainder over is a valid one and is not affected by the doctrine of *May* v. *Joynes.*

The appellant also raises a question as to the meaning of the following language in the will of Louis Voigt, Jr., relating to the disposition of his estate in the event of the termination of the life estate, either by the marriage or by the death of the life tenant. In the event of termination by marriage, the will gives the testator's widow absolute ownership of one-third of the estate remaining unexpended, and provides that "the other two-thirds of my remaining estate shall be divided equally among my children, the descendants

of any deceased child to take in place and stead of any deceased parents 'per stirpes' and not 'per capita', and if my wife shall depart this life without having married again, then my said estate shall be equally divided among my children in the manner aforesaid."

The appellant contends that the identity of the children who will take the remainder interest is to be determined as those who survived the death of the life tenant, whereas it is the position of the appellee that the children who would take the remainder interest are those who were living at the time of the death of the testator. It is the contention of the appellant that Louis A. Voigt, the son of the first testator, took a remainder contingent upon his surviving his mother, the life tenant, and, since he did not survive her, he took nothing under his father's will, and therefore the remainder interest after the expiration of the widow's life estate passed directly to the appellant and appellee in equal shares under the will of their grandfather, Louis Voigt, Jr. It is the position of the appellee, which was sustained by the decision of the court below, that Louis A. Voigt, being the only child who survived the testator, took a vested remainder under his father's will, and, therefore, the property embraced therein passed to the appellee under the will of Louis A. Voigt.

The appellant argues that futurity is annexed to the substance of the gift of the remainder, and that what is known as the "Divide and Pay Over Rule" is applicable. Under this rule, the vesting of the remainder is deferred until the death of the life tenant and the identity of the persons composing the class who are to take the remainder under the will of the testator is to be determined by those living at that time.

In *Driskill* v. *Carwile*, 145 Va. 116, 133 S. E. 773, which is relied upon by the appellant, the clause of the will which was under consideration provided "the said property I give unto Nannie P. Moon during her life and that of her husband, Nathan S. Moon, and at their decease,

I direct the same to be sold and equally divided between the living heirs of my brothers and sisters." In determining the persons among whom the property was to be divided after the life tenants had died, the opinion of Prentis, P., emphasizes the fact that the primary duty of the court is to ascertain the intention of the testator. Accordingly, it was held that, by the use of the words "living heirs", under the circumstances of that case, the testator intended the beneficiaries to be those who were living at the time of the death of the last life tenant, and that such living heirs should take per capita as members of a class and not per stirpes. The opinion recognizes that, in many cases, there is no general rule which can solve the doubts which may arise in the interpretation of wills.

*Callis* v. *Ripley*, 161 Va. 472, 171 S. E. 497, also relied upon by the appellant, involved the interpretation of the following clause in the will of W. R. Ripley providing for the disposition of his estate: "That is to say, I desire to loan to my son, William O. Ripley, the home where I at present reside on trust during his natural life, and should he die leaving no lawful issue of his body, then the said land and improvements shall be equally divided with my next surviving heirs."

In an opinion by Judge Chinn consideration was given to the fact that the remainder over was a contingent remainder and would be effective only in the event of the death of the life tenant without issue, and that this, taken in connection with the use of the word "then", referring to the time of the death of the life tenant, and the words "my next surviving heirs", clearly showed that the testator intended the beneficiaries to be those who were living at the time of the death of the life tenant. This being true, the surviving heirs referred to in the will constituted a class, the members of which could be ascertained only at the time of the life tenant's death.

In all the decisions of this court in which the so-called "Divide and Pay Over Rule" has been held applicable, the

takers of the remainder interest constituted a class, the members of which, under the intention of the testator, could be ascertained only at the time of the death of the life tenant. This was true in the case of *Harris* v. *Harris*, 166 Va. 351, 186 S. E. 29, cited by appellant.

Bearing in mind that the will of Louis Voigt, Jr., speaks as of the date of the death of the testator, it is apparent that a short time before his death he could have expected to be survived by only one child, if any, and this was his son Louis A. Voigt. His only other child, a daughter, had predeceased him leaving no issue. It seems clear, therefore, that the gift of the remainder had application to only one child, and that the will did not create as a *class* which would be beneficiaries the children of this child unless he, himself, failed to survive the testator.

In *Bird* v. *Newcomb*, 170 Va. 208, 218, 196 S. E. 605, it was said that it is "the well established rule of construction that all devises and bequests are to be construed as vesting at the testator's death, unless the intention to postpone the vesting is clearly indicated by the will. When the meaning of a will is doubtful the court will incline to the construction which would regard the interest as vested."

See also, to the same effect, the numerous cases cited in Michie's Va. & W. Va. Digest, Vol. 9, Wills, section 166, page 1132.

This rule was applied in the opinion of this court by Justice Hudgins (now Chief Justice) in the case of *James* v. *Peoples Nat. Bank*, 178 Va. 398, 17 S. E. (2d) 387, involving the interpretation of the following provisions of the will of W. C. James: "I bequeath unto my beloved wife Emma * * * (certain described property, including $50,000 in cash,), to have and to hold for her sole benefit and use during her natural life: At her death the same to be equally divided between our three children to wit: Arthur A. James, Frederick C. James & Mrs. Imogene M. Mays or to their children, if any, if they be not living.

"After the above bequests are satisfied, I direct that the remainder of my estate, of whatsoever nature, shall be equally divided to my three children above named, or to the children of any who may not be living—they taking the parents share."

We held that it was clearly the intention of the testator that the provision in favor of the children of the named beneficiaries referred only to those of such beneficiaries as failed to survive the testator. The opinion reviews at length our decisions, as well as other relevant authorities, bearing on the question. It is unnecessary to again discuss them here. They are convincing that the provision in the will of Louis Voigt, Jr., with respect to the children taking the share of any deceased parent *in the event the life estate of the widow should be terminated by her marriage,* cannot be extended, by implication, to apply where it was actually terminated *by her death,* and that, even if it were so extended, our conclusion would not be affected thereby. The will makes no mention of the children of a deceased parent taking the parent's share in the later event. In view of the Virginia rule favoring the early vesting of estates, we conclude that it was the intention of the testator that, upon his death, his son, Louis A. Voigt should take a vested remainder in the property in question.

The decree of the Hustings Court is affirmed.

*Affirmed.*