# Richmond

BESSIE R. GRIFFIN v. CENTRAL NATIONAL BANK OF RICHMOND, ETC., AND OTHERS.

January 26, 1953.

Record No. 4022.

Present, All the Justices.

The opinion states the case.

*Williams, Mullen, Pollard & Rogers, William J. McDowell,* for appellant.

*Wiltshire & Rives, E. W. McCaul, Samuel B. Witt, Jr.,* for appellees.

HUDGINS, C. J., delivered the opinion of the court.

Henry W. Rountree died, testate, on October 4, 1928. He named his five children, Alexander W. Rountree, A. Valentine Rountree, Henry W. Rountree, Jr., Russell S. Rountree and Bessie R. Crawford (now Bessie R. Griffin) principal beneficiaries in his holographic will and the codicil thereto, bearing date on September 6 and September 12, 1928, respectively. The Central National Bank of Richmond, substituted trustee, instituted this suit against Bessie R. Griffin and the successors in title and interest of her four deceased brothers, to obtain the guidance and instruction of the court in the distribution of the $10,000 trust fund created by the testator for the benefit of Alexander W. Rountree during his life.

The pertinent provisions of the will are:

"THIRD: Two Hundred and ten thousand ten HWR dollars $210,000.00 of my Estate I *do* and bequeath to the American Trust Co., Richmond, Va., in trust for the benefit of my five (5) children and direct that the same shall be divided in five (5) parts as follows: Alexander W. Rountree Ten Thousand Dollars $10,000.00 and the rema*iner* of the amount Two Hundred Thousand Dollars divided in four (4) equal parts of Fifty Thousand Dollars $50,000.00 each to my four (4) children: Mrs. Bessie R. Crawford, A. Valentine Rountree, Henry W. Rountree, Jr., and

Russell S. Rountree, said American Trust Co., Richmond, Va., shall act as Trustee for each of them, hold, manage and dispose of the same as herein specified and directed so long as each of my five (5) children shall live, said Trustee shall apply all income from the principal of their respective parts or shares property held in trust, make payments semi-annually or quarterly, for their support and maintenance without being subject to his or her liabilities or *aliation* by him or her. Upon the death of my said five (5) children or any one of them should he or she leave issue surviving said trustee shall hold said share in trust for his or her issue *per stirpes*. Said trustee may spend so much of said income during minority and turn over the principal and interest at majority. The share of any said issue dying shall pass to his or her brothers or sister surviving. In case no issue be surviving then any such share shall pass to such *such* of my four (4) other children surviving: Mrs. Bessie R. Crawford, Henry W. Rountree, Jr., A. Valentine Rountree and Russell S. Rountree.

"FOURTH: Referring to the third clause so far as it refers to Alexander W. Rountree, I direct the same be so amended in event of his death all interest he may have in the said trust fund of 10,000 shall go to his brothers and sister surviving. And the Trust Co. Trustee shall have full power to withhold the income and be guided by advice obtained from my other four children under what conditions the same may be paid to him.
The amount 10,000 Trust Fund
*4the continued concerning Alexander W. Rountree amending 3rd*
In lieu of any other participation in my estate, he having received during his life and *inheritance* caused this together from his grandfathers and mothers estate, therefore, it is to the best interest to all concerned and more especially that he should not have possession of more.

"FIFTH: All the rest and residue of my estate of every kind and description I do give and bequeath to my four (4) children herein named: Mrs. Bessie R. Crawford, A. Valentine Rountree, Henry W. Rountree, Jr., and Russell S. Rountree, each of them one quarter equal interest to share and share alike."

The codicil reads as follows:

"Sept. 12, 1928. Referring to the 3rd clause of my last will and testament, bearing date September 6th, 1928, in so far as it my four children Bessie R. Crawford, A. Valentine Rountree,

Henry W. Rountree, Jr., and Russell S. Rountree and —200,-000.00 of the trust fund, I direct that the said 3rd clause be canceled and revoked and the ten thousand 10,000.00 provided for Alexander W. Rountree remain in force in every respect as specified this change the $200,000.00 of the said trust fund thereby throwing the same into the fifth (5th) Clause of my will of Sept. 6, 1928, the rest and residue of my estate, real and personal, of every description. I hereby confirm my said will of Sept. 6th, 1928, in all other respects.''

The five children of the testator were living at the time of his death. The three brothers predeceased Alexander W. Rountree who died, without issue, on May 3, 1951, leaving his sister, Bessie R. Griffin surviving. The learned chancellor entered a decree declaring that under the will the $10,000 trust fund was created for the benefit of Alexander W. Rountree during his lifetime, and that his three brothers and his sister took equal interests in remainder which vested upon the testator's death. From that decree Bessie R. Griffin obtained this appeal.

The only question presented is whether the word ''surviving'' used in paragraph ''FOURTH'' of the will refers to the death of the testator or to the death of Alexander W. Rountree.

After citing numerous authorities appellant summarizes as follows the rule she contends should be applied: ''The fundamental principle applicable to the construction of all wills is to ascertain, if possible, the intention of the testator from an inspection of his will as a whole and in the light of all of the language used. If his intention can be so ascertained and it violates no rule of law, it must be given full effect.''

Appellees, after citing an equal array of authorities, state their contention thus: ''Virginia from the early years of the Commonwealth has favored strongly the early vesting of estates and refers surviving words to the death of the testator to cause remainders to vest at the testator's death rather than at the death of the life tenant, unless there be found in the will a clear and unequivocal manifestation of a special intent on the part of the testator to the contrary.''

██ ██ It is conceded that the intention of the testator, when ascertained, is controlling. The troublesome problem is to ascertain it. If the testamentary intent is apparent, with reasonable certainty, on the face of the will, there is no necessity for the court to indulge in presumptions or to invoke canons of con-

struction. But when the meaning of the words used by the testator is vague, uncertain or obscure, the court invokes the aid of the canons of construction to ascertain the testamentary intent.

No attempt will be made to review the many adjudicated cases and authorities cited in the excellent briefs of the respective parties, as most of them were reviewed in three recent cases—*James* v. *Peoples National Bank,* 178 Va. 398, 17 S. E. 2d 387; *Amer. Nat. Bk., etc., Co.* v. *Herndon,* 181 Va. 17, 23 S. E. 2d 768; *Voigt* v. *Selander,* 190 Va. 638, 58 S. E. 2d 25.

In each of these cases the presumption that the testator used the words of survivorship to refer to his own death rather than that of the first taker, was applied because a contrary intention was not indicated on the face of the will with reasonable certainty. In the last named case—*Voigt* v. *Selander,* supra— the following excerpt from *Bird* v. *Newcomb,* 170 Va. 208, 218, 196 S. E. 605, was quoted with approval: ''When the meaning of a will is doubtful the court will incline to the construction which would regard the interest as vested.''

We said in *James* v. *Peoples National Bank,* 178 Va. 398, 404, 17 S. E. 2d 387: ''While rules of construction are well established, the dominating rule is the intention of the testator. This intention, gathered from the whole will, must predominate over all technical words and expressions. When ascertained, the intention, as expressed in the various wills, explains and limits to their proper application the various exceptions and refinements of distinction to be found in the cases.''

The court approaches the construction of a will conscious of the fact that the testator (within certain limitations not now pertinent) has the right to dispose of his property as he sees fit. The beneficiaries named (other than a consort) are the objects of his bounty—not innocent purchasers for value. Hence, the dominant element in the construction of all wills is the intention of the testator. Canons of construction are not rules of property and are invoked by the court to aid in ascertaining the intention of the testator. While precedents are helpful, they have not the same controlling force that is usually accorded them in the construction of other instruments, such as deeds, insurance policies, bills of lading, and the like. It has been aptly said ''no will has a twin brother.''

Chief Justice Prentis, in *Simmons* v. *Gunn,* 156 Va. 305, 308,

157 S. E. 573, said: "While decided cases are helpful, they are not necessarily controlling, because no two wills are alike; the words are different; the surrounding circumstances may be different; so that it may be truly said that each will is a law unto itself. However, after considering the entire will, the intention of the testator and the words used to express that intention, the court must give effect to that intention so expressed in the words of the testator, unless it violates some rule of law, or is against public policy."

In *Wornom* v. *Hampton N. & A. Inst.*, 144 Va. 533, 541, 132 S. E. 344, this is said: "All rules with reference to wills, however, are subject to this, that the underlying principle always is that in the construction of wills the intention of the testator, if it is legal and can be determined, is controlling. All of the refinements of the law must yield to the power of the testator to dispose of his property as he desires. When this intention, which is the guiding star, is ascertained and can be made effective, the quest is ended and all other rules become immaterial * * *."

In *Farrar* v. *Pemberton*, 154 Va. 61, 70, 152 S. E. 339, the court adopted an opinion of the late Judge Frank T. Sutton, the trial judge, in which the following excerpt appears: " 'The court should not depart from the plain meaning of words to create an ambiguity that it may later construe those words by certain recognized rules of construction. These rules are to be invoked only when the words of the testator, standing alone, create an ambiguity.' "

With these concepts in mind, we turn to the will of Henry W. Rountree to ascertain from it, if possible, his intention. The instrument is a holographic will, disposing of a large estate, bearing date September 6, 1928, with a codicil added September 12, six days thereafter. The wife predeceased the testator. The testator died October 4, 1928, less than a month after the will was written, leaving five children surviving him. While it is apparent that the will was not drawn by a man versed in the law and altogether familiar with legal terms, the language used to express his intention is reasonably clear and explicit.

In the paragraph of the will numbered "THIRD," the testator created five trust funds, totaling $210,000; $10,000 for the benefit of Alexander W. Rountree, and $50,000 for each of his other four children during their lives. He directed that, upon

the death of any of his five children leaving issue surviving, the trustee should hold his share for such issue *per stirpes,* but that "In case no issue be surviving, then any such share shall pass to such of my four (4) other children surviving: Mrs. Bessie R. Crawford, Henry W. Rountree, Jr., A. Valentine Rountree and Russell S. Rountree."

The testator amended the third paragraph of the will, in so far as it affected the disposition of the corpus of the trust fund, by adding paragraph "FOURTH" which eliminated the possible issue of Alexander W. Rountree, and directed that the property should pass to others, using the following language: "Referring to the third clause so far as it refers to Alexander W. Rountree, I directed the same be so amended in event of his death all interest he may have in the said trust fund of—10,000 shall go to his brothers and sister surviving."

The specific inquiry is what did the testator intend or mean by the words "in event of his death all interest he may have in the said trust fund * * * shall go to his brothers and sister surviving." There is no doubt that the phrase "in event of his death" specifies the death of the life tenant as the time when the property should pass to the remaindermen who were described as "his brothers and sister surviving." "His" is a pronoun, and refers to Alexander W. Rountree. If the testator had not used the word "surviving," this provision would have created a vested estate in certain persons—the three brothers and sister, with possession postponed until the death of the life tenant. The testator certainly meant something by use of the word "surviving." The word cannot be ignored. "Surviving" means remaining alive after the death of another, or some certain event. To what or to whom does it relate? What is its antecedent? The death of the testator is not mentioned in the will. It cannot, therefore, refer to his death. Giving to the words "his brothers and sister surviving" their usual, common and accepted meaning, leads to the conclusion that the testator intended the corpus of the fund to pass only to the brothers and sister who survived Alexander W. Rountree, and none other. The remainder thus created is contingent, as it cannot be determined which of his three brothers or sister will survive the life tenant.

The foregoing is the only conclusion in accord with the meaning or sense in which the testator used the word "surviving" in other parts of his will. His original intention,

gathered from the entire will, was to create the five trust funds in the proportions stated, for the benefit of each of his children for and during their lives, and in the event any of the five children died leaving issue surviving, such issue, on reaching majority, would take their parents' share, but in case no issue survived, then any such share "shall pass to such of my four (4) other children surviving:" The word "surviving" is used four times in the third paragraph dealing with the trust funds, and in each instance the testator used it to refer to such of his children, or their issue, as survived the life tenant. It is reasonable to think the testator used it with like meaning and reference in the fourth paragraph.

If a testator has in his will explained or indicated the meaning which he attaches to a particular word, that meaning should prevail in order to carry out his intention, irrespective of the technical or grammatical meaning of the word. *Hanckel* v. *Holcombe,* 121 Va. 392, 93 S. E. 634.

We said in *Randolph* v. *Wright,* 81 Va. 608, 612, "* * * where from the context of the will the testator has explained his own meaning in the use of certain words, the courts will take that explanation as their guide without resorting to lexicographers to determine what is the meaning in the abstract, or to adjudicated cases to discover what they have been held to mean in other wills."

Appellees' final contention is that in construing the words of survivorship, the court must confine its attention to the operative language of the will to ascertain the intention of the testator, and that since the third clause of the will was amended and in part revoked, the part revoked is no longer a part of the will and cannot be considered in ascertaining the meaning of the word "surviving." The only authorities cited in support of this contention are *Seaton* v. *Seaton,* 184 Va. 180, 34 S. E. 2d 236, and *McGehee* v. *McGehee,* 189 N. C. 558, 127 S. E. 684. Neither of these cases is authority for appellees' contention. The question of election was involved in each of them, and it was held that a void or illegal provision of the respective wills should not be considered in determining whether a beneficiary under the valid provision should be put to an election between his rights under such provision of the will and his rights as an heir.

The testator, in his codicil. revoked that part of the third

paragraph which created the $200,000 trust fund for his four children other than Alexander W. Rountree, and directed that this fund pass under the residuary clause directly to the four named children. In the residuary clause, no words of survivorship were used, nor were any necessary.

The fourth paragraph of the will is incomplete and unintelligible unless it is read in connection with the third paragraph which creates the life estate. However, in the codicil, as well as in the fourth paragraph of the will, the testator emphasized his desire that the provision made for Alexander W. Rountree in the third paragraph as amended by the fourth paragraph, should "remain in force in every respect," and concluded the codicil with the sentence: "I hereby confirm my said will of September 6 in all other respects." The original and the amended provisions are part and parcel of the testator's disposition of the property described.

"In cases of doubt, where some of the provisions of a will or codicil have been revoked by a later one, resort may be had to the revoked provisions as an aid in gathering the intention of the testator as expressed by his later acts." *Defrees* v. *Brydon*, 275 Ill. 530, 540, 114 N. E. 336. See also *Rinker's Adm'r* v. *Simpson*, 159 Va. 612, 166 S. E. 546.

"A void or inoperative part of a will may be examined to ascertain the intention of the testator as to the valid part. The doctrine, however, does not apply to cases of election where, the will being in part invalid or inoperative, a legatee or devisee is not compelled to elect between his rights under the will as to the property given to him and his rights as heir or next of kin, with respect to the property undisposed of, but may take in both capacities." 69 C. J., Wills, sec. 1156 (4), p. 110.

The words of survivorship in the will under consideration are somewhat similar to those used in the will construed in *Cheatham* v. *Gower*, 94 Va. 383, 26 S. E. 853. There the pertinent language was: "I give to my nephew, T. M. Cheatham, during his life my mansion house, * * * and at his death to his surviving children." The will also provided that certain other property be equally divided between the children of L. L. Lester and T. M. Cheatham.

It was held that all of the children of T. M. Cheatham, the life tenant, including those born after the death of the testator,

and who were living at the death of the life tenant, and those only, took an interest in the property devised.

In *Driskill* v. *Carwile*, 145 Va. 116, 133 S. E. 773, the testator devised certain property to his sister for life and then provided that "the said property I give unto Nannie P. Moon during her life and that of her husband, Nathan S. Moon, and at their decease, I direct the same to be sold and equally divided between the living heirs of my brothers and sisters." It was held that the words of survivorship referred to the death of the life tenants and not to the death of the testator.

In *Callis* v. *Ripley*, 161 Va. 472, 171 S. E. 497, the testator devised certain property upon which he then resided to his wife "during her natural life," and upon her death to be disposed of "in the following manner: That is to say, I desire to loan to my son, William O. Ripley, the home where I at present reside on trust during his natural life, and should he die leaving no lawful issue of his body, then the said land and improvements shall be equally divided with my next surviving heirs." In holding that the words of survivorship "my next surviving heirs" referred to the death of the life tenant and not to that of the testator, it was said: "* * * we think it clearly appears from the will here under consideration that the testator intended the words of survivorship used in the limitation over to refer to the time of the life tenant's death and not to that of his own death. * * * In dealing with wills general rules of construction are to be applied with reservations. Indeed, we have said that in varying circumstances different constructions are sometimes placed upon the same word, but so far as we can generalize we do * * *."

For an extended discussion of the subject of survivorship, see Annotation in 114 A. L. R. pp. 4-113.

Appellees cite, among other authorities, section 743 of the first edition of Minor on Real Property, and contend that the following text is applicable:

"So, if a remainder be given after a life estate 'to the testator's *surviving* children' or 'to the *surviving* children of the life tenant' (or of a third person), such a construction will be given to the ambiguous word 'surviving' as will not make the children's *survival of the life tenant* a condition precedent to the vesting of the estate (which would make the remainder *contingent*). Hence, the former English rule and that now adopted in Virginia is in favor of construing the word 'surviving' as relating, in the

absence of a contrary intent, to the *testator*, and *not to the life tenant.''*

Appellees did not cite the addition made to this paragraph by Dean Ribble in the second edition of Minor on Real Property, sec. 713, which is as follows: ''It should be carefully noted, however, that this is a presumption which may readily be rebutted by evidence of a contrary intent.''

Dean Ribble's comment in a note to this section is as follows: ''Words of survivorship as the other words in a will should be construed according to the intent of the testator subject to the usual presumptions in aid of discovering the testamentary intent. The construction of the word 'surviving' as given in the text would seem more frequently to defeat than to carry out the testamentary intent. Thus, this rule of construction should be limited in its application to those cases in which there is no evidence of intent and the law is left to apply its preference for vested estates.'' In support of the addition to the text and the comment, the author cited *Cheatham* v. *Gower,* 94 Va. 383, 26 S. E. 853, and *Dent* v. *Pickens,* 61 W. Va. 488, 58 S. E. 1029.

Our conclusion is that it appears on the face of the will, with reasonable certainty, that the testator intended the words of survivorship to refer to the death of Alexander W. Rountree; and since appellant was the only one of the brothers and sister of the life tenant who survived him, the remainder interest in the $10,000 trust fund passed to her on his death.

The decree of the trial court is reversed and the cause remanded for such further proceedings as are appropriate and not inconsistent with the views herein expressed.

*Reversed and remanded.*