# Richmond

GEORGE RICHARD CLARK v. KENNETH GORDON WHALEY, ET AL.

May 25, 1972.

Record No. 7708.

Present, Snead, C.J., I'Anson, Gordon, Harrison, Cochran and Harman, JJ.

*James C. Breeden* (*Ammon G. Dunton; Dunton, Simmons & Dunton,* on brief), for appellant.

*M. Ray Johnston* (*Clarke and Johnston,* on brief), for appellees.

GORDON, J., delivered the opinion of the court.

John Oliver Hanks died testate in 1943, survived by his wife but without issue. Article Fourth of Hanks's will devised a parcel of land known as "Bunker Hill" to his wife for her life. In the event that Hanks should die without issue (which was the case), the first sentence of Article Sixth devised Bunker Hill after his wife's death to the youngest sons of Hanks's sisters. Upon the wife's death in 1969 the question arose, and is now before us, whether Bunker Hill was vested in the youngest sons living at the death of Hanks or in the youngest sons living at the death of Hanks's wife. Article Sixth provides:

> "If there are no children living at my death, or born ten months thereafter, after the decease of my wife Gertrude Hanks I give and devise in fee simple the tract or parcel of land above described and known as Bunker Hill to the youngest son of each of my three

sisters, namely Florence Ann Clark, Mary Willie Whaley, and Susan Gertrude Headley, to be equally divided among each of the three youngest sons. If there is no youngest sons of any of the above named Sisters living then to the Youngest daughter of any or all of my sisters." [1]

At the testator's death, William B. Clark was the youngest son of the testator's sister Florence Ann Clark. But William B. Clark died in 1968, before the death of the testator's wife. When the testator's wife died, George Richard Clark (William B. Clark's older brother) was Florence Ann Clark's youngest living son. So the present contest is between William B. Clark's heirs (appellees) and George Richard Clark (appellant).[2]

The trial court held that the remainder interest in Bunker Hill vested in William B. Clark at the testator's death and was not divested upon William B. Clark's death before the death of the testator's wife. The appellant, George Richard Clark, contends that William B. Clark's interest was divested at his death, and that Bunker Hill vested in George Richard Clark upon the death of the testator's wife.

Our purpose of course is to find the testamentary intent.[8] If a will reflects a clear intent that the determination of beneficiaries be postponed until a life tenant's death, rather than the testator's death, we honor that intent. *See Griffin* v. *Central Nat'l Bank*, 194 Va. 485, 74 S.E.2d 188 (1953). But if a will is ambiguous in this regard, we invoke the aid of the canon of construction known as the early vesting rule. Under that rule, "devises and bequests are to be con-

---

[1] Article Fifth of the will provides: "If there should be a child or children born and living at my death, or during ten months thereafter, I give and devise to them in fee simple after the decease of my wife Gertrude Hanks the said tract or parcel of land known as Bunker Hill which is above described to be equally divided among them."

[2] William B. Clark died intestate, leaving as his heirs his wife, Elizabeth J. Clark (now Shinnick), and his daughter, Nancy C. Hood. Elizabeth J. Shinnick and Nancy C. Hood are the appellees who have an interest in the outcome of this appeal. The other appellees are Kenneth G. Whaley and Thomas H. Headley, the youngest sons of the testator's sisters Mary Willie Whaley and Susan Gertrude Headley, and Jeannette Hanks C. Cotterell, the youngest daughter of Florence Ann Clark.

[8] "I think we may concede without citation of supporting cases, of which there must be many thousands, that the purpose of construing a will (where construction is necessary) is to find the intent of the testator. We are perfectly agreed that this must be found from the whole will—from its 'four corners'. The cliches and formulas by which this never-doubted principle is expressed are so numerous and so frequently cited that no lawyer now grasps a will by its four corners without facing north." *Cannon* v. *Cannon*, 225 N.C. 611, 621-22, 36 S.E.2d 17, 23 (1945) (Seawell, J., dissenting opinion).

strued as vesting at the testator's death, unless the intention to postpone the vesting is clearly indicated in the will". *Chapman* v. *Chapman*, 90 Va. 409, 411, 18 S.E. 913 (1894).

A case in point is *Catlett* v. *Marshall*, 37 Va. (10 Leigh) 79 (1839), involving the will of Thomas, Lord Fairfax. Lord Fairfax bequeathed annuities under his will to each of his three nieces. Respecting the third annuity, the will provided, "upon the death of my other [third] niece, Ann Suzanna Martin, the annuity of £100. sterling bequeathed to her be given and continued to the fourth child of the said Bryan Fairfax, during his or her natural life".

At the death of Lord Fairfax, Elizabeth Fairfax was Bryan Fairfax's fourth living child in the order of seniority; but at the death of the life tenant, Anne Fairfax (who was born after Lord Fairfax's death) was Bryan Fairfax's fourth living child in the order of seniority. (William Fairfax, Bryan Fairfax's second living child in the order of seniority at Lord Fairfax's death, died before the life tenant died.)

The contest in *Catlett* was between the fourth child at the testator's death and the fourth child at the life tenant's death, each contending that she qualified as the fourth child under the terms of the testator's will. Applying the early vesting rule, the Court held that the fourth child living at the testator's death, Elizabeth Fairfax, was entitled to the annuity.

Just as the Court in *Catlett* could find in Lord Fairfax's will no clear indication of intent to postpone the vesting of the gift until the death of the life tenant, Ann Suzanna Martin, we can find in John Oliver Hanks's will no clear indication of intent to postpone the vesting of the gift until the death of the life tenant, Gertrude Hanks.

Article Fifth of Hanks's will (note 1 *supra*) devised a remainder interest in Bunker Hill to beneficiaries described as his children living or in their mother's womb at his death. Alternatively, if Hanks left no children, Article Sixth of the will devised the remainder interest to persons described as the youngest son of each of the testator's sisters. In neither Article did the testator attach a condition that the remaindermen must survive the life tenant.

In both Articles Fifth and Sixth, the testator devised the remainder interest "after the decease of my wife Gertrude Hanks". These words might be taken to refer to the time when the beneficiaries should be determined, as contended by George Richard Clark's counsel. Conversely, these words, which are substantially the same as used in Lord Fairfax's will ·(*supra*), might be taken to refer merely to

the time when the beneficiaries should enjoy or possess the remainder interest. In view of the ambiguity, we should determine the testamentary intent by applying the early vesting rule. And under that rule, the beneficiaries must be determined at the testator's death.

Counsel for George Richard Clark emphasizes the word "living", found in the last sentence of Article Sixth: "If there is no youngest sons of the above named Sisters *living* then to the Youngest daughter of any or all of my sisters". Counsel argues that since the word "living" must mean living at the death of the testator's wife, the sentence reflects a clear intent to postpone the determination of the class until the death of the testator's wife. But "living" may be taken to refer either to the time of the testator's death or to the time of his wife's death.[4] Again we find ambiguity that calls for application of the early vesting rule.

For the reasons stated, we hold that the trial court properly construed the will of John Oliver Hanks as vesting in William B. Clark at the testator's death an indefeasible remainder interest in Bunker Hill.

*Affirmed.*

---

[4] The word "living" may also be taken to refer to the times of the deaths of the testator's sisters. But at oral argument counsel for George Richard Clark declined to advocate that interpretation.