## CIRCUIT COURT OF FAIRFAX COUNTY

Miller & Smith, Inc.

v.

Town of Herndon

November 12, 1985

Case No. (Law) 68039

By JUDGE THOMAS A. FORTKORT

This case was originally heard on September 25, 1985, at which time the court denied the claim of the plaintiff and rendered a judgment in favor of the defendant. Thereafter, defendant requested a rehearing on the matter and the court vacated its original judgment on October 18, 1985. Further hearings were had on this latter date and both parties have submitted extensive briefs.

The case involves construction of three legislative acts; two state statutes and a town ordinance. The plaintiff is a developer of certain subdivisions known as Hunter's Creek Sections I and II. As part of its approval of these subdivisions, the Town of Herndon demanded and received from plaintiff, Miller and Smith, $60,660 for the subdivision's pro rata share of off-site sewerage and watershed improvements. The money was held by the town in a separate account and co-mingled interest from the town's general rate of earnings from deposits was uniformly applied to this account and several similar accounts.

On April 8, 1972, the State legislature passed Section 15.1-510.7 of the Code of Virginia which allowed *boards of supervisors* to assess pro rata costs against developers-subdividers for off-site improvements of sewers and drainage caused by construction of the subdivision. The developer-subdivider could put up a bond or make payments as as-

sessed. In the latter case money was required to be placed in an interest bearing account for the benefit of the developer-subdivider.

On October 10, 1972, the Town of Herndon adopted an ordinance which contained a formula for assessing developers for the costs of off-site improvements. No method of payment or bonding or mention of interest appeared in the ordinance.

It is conceded that on the date of passage, the Town of Herndon did not have the power to make this off-site assessment. A later statute 15.1-466(j), effective July 1, 1973, granted power to make assessments for off-site improvements to municipalities as the earlier statute 15.1-510.7 had given to county boards of supervisors.

The assessment and payment by Miller and Smith came after the 1973 statute. Plaintiff argues that the town ordinance, originally invalid, was validated by the subsequent enabling legislation. This will be discussed later in this opinion letter.

The threshold question is the meaning of the language in 15.1-466(j). The words "for the benefit of the subdivider or developer" are key to this suit. For it is these words which create a claim for interest by the subdividers-developer. Although neither party mentioned the case in their brief, the word "benefit" has been defined by the Virginia Supreme Court. In the case of *Bird v. Newcomb*, 170 Va. 208 (1938), at page 216, the court states: "In Webster's New International Dictionary, Second Edition, the word 'benefit' is defined as meaning '[w]hatever promotes welfare; advantage; profit,' and also 'a pecuniary advantage or profit'."

The *Bird* court further quotes *Stowell et al. v. Stowell's Ex'r*, 59 Vt. 494, 8 A. 738, 50 Am. Rep. 748 (1887), the word benefit as used in a will was defined thus "it was for her advantage, her profit, her gain, her account, her interest. The word 'benefit' and its synonyms mean more than simple support; they mean any purpose to which the absolute owner of property can devote it; and, given for that purpose, they mean that Mrs. Stowell had unlimited power to dispose of it at her pleasure."

The Court's copy of *Webster's New Collegiate Dictionary* (principal copyright 1973, the approximate date of the statute in question) defines *benefit* as "to be useful or profitable to."

The evolution of the word "benefit" has evolved into more specific modern meanings in relation to various instruments or government actions which result in "benefits" being paid to annuitants or recipients. Nevertheless, the basic association of the word benefit with pecuniary advantage is unchanged.

The only usual and ordinary construction of the statutory language in 15.1-466(j) "to place such deposits into an interest bearing account for the benefit of the subdivider or developer," is that the subdivider or developer has an absolute right to the interest accrued.

Both the earlier assertion by this Court, that the interest bearing account would only come into play where a developer foregoes his project and thus is entitled to return of his pro rata payment advanced with interest; or the Town Council's interpretation that the interest could be used to cover the costs of off-site development if they exceeded the original estimates are erroneous. Each of these interpretations are posited on the premise that the interest earned in the interest bearing account is conditionally the property of the developer. The definitions cited above clearly indicate that "for the benefit of the subdivider or builder" clearly means his absolute right to the interest earned in the account.

That issue aside, the plaintiff's assertion that the inherently invalid town ordinance was made valid by a subsequent act of the legislature must be examined.

The town council in enacting its ordinance was likely assuming it had the powers to enact the ordinance by virtue of Section 15.1-510.7 which all parties agree only applied to county boards of supervisors. Assuming that is so, the council did not follow the legislative language of 15.1-510.7 but enacted an ordinance which simply formulated a method for assessing off-site improvements against developers.

Plaintiff argues that when the State Legislature subsequently granted the power of assessment to the town by Section 15.1-466, the town ordinance became valid. However, the town while it had the power to make the assessments could not pass an ordinance which did not create an interest bearing account. (The town in fact did set up interest bearing accounts although plaintiff questions whether the Town's methodology was valid.)

Assuming, that despite authority to the contrary, that subsequent enabling legislation would validate previously enacted invalid ordinances, the plaintiff's theory in this case must fail.

To lend any validity to the legislative process, the invalid ordinance would have to contain language so explicit so that its ordinance was clearly and unequivocally related to the enabling statute. In other words, had the Town of Herndon used language so unmistakably related to 15.1-510.7, then the subsequent empowering action of 15.1-466 might be construed as simply giving validity to that which the town clearly intended. That is not the case at bar.

The action plaintiff requires is for the court to declare the town ordinance valid and then modify the ordinance to correspond with the language of 15.1-466, so that plaintiff may recover his interest.

For the court to engage in that invitation would create chaos among legislative bodies. For every ordinance or local government enactment would then become fair game for the court to modify local ordinances into state statutes on the basis that they contain similar language, goals or interests.

Court intrusion into legislature enactments must be minimal, not pervasive. Rights must be clearly defined not arrived at by creation of a court ordered ordinance consisting of part state statute, and part town ordinance, in which form it was never passed by the town council and perhaps not even contemplated by it.

The mischief inherent in that approach is illustrated by these statutes. In 1973, an interest bearing account was required under 15.1-466 and 15.1-510.7. In 1980, the same statutes were broadened to include escrow accounts, which apparently do not require interest to be paid to the builder-subdivider. Is the town ordinance, invalid in 1972, valid and modified in 1973, valid and remodified in 1980? The answer is clear. None of the above apply.

Plaintiff's motion for reconsideration, for the reasons stated, is denied. Town counsel will submit a final order of dismissal to the Court.