# Richmond

## Agnes Sitterding Maiorano, Et Al. v. Virginia Trust Company, Surviving Trustee, Etc., Et Al.

December 1, 1975.

Record No. 741038.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Nicholas A. Spinella; Travis W. Poole (Spinella, Spinella & Owings; Poole & Poole,* on brief), for appellants.

*John W. Edmonds, III (Jane L. Schwarzschild; Mays, Valentine, Davenport & Moore,* on brief), guardian *ad litem* for the unborn issue of Fritz Sitterding.

Compton, J., delivered the opinion of the court.

This is the second time we have considered the will of Fritz Sitterding. In *Gasque* v. *Sitterding*, 208 Va. 206, 156 S.E.2d 576 (1967), we decided the time of vesting of the income of the trust established under article THIRD of the will. Now we determine the time of vesting of the principal of that trust.

The pertinent portions of article THIRD, which we have again designated for convenient reference as (a), (b), (c) and (d), follow:

(a) "THIRD: I direct my Executors to set aside from my estate, and hold as a trust fund, Three Hundred Thousand Dollars ($300,000),....

(b) "The said Trustees shall hold the said trust fund during the lifetime of my three children, and until the expiration of twenty-one years after the death of the last survivor of my said three children.

(c) "I direct the said Trustees to divide the income from the said trust estate quarterly among my three children. In the event of the death of any one of my children leaving issue, the share of the income going to such child shall be paid to his or her issue. In the event that any of my children shall die leaving no issue surviving him or her, then the share of the income of such child so dying shall go to my surviving child or children, and the issue per stirpes of any who have died leaving issue.

(d) "At the expiration of the period of twenty-one years after the death of the last survivor of my children, I direct that the said trust fund shall be divided per stirpes among the issue of my three children."

The testator died in the City of Richmond in 1928, at the age of 74. Upon probate in 1928 of his will, executed in 1926, William Sitterding, Fred B. Sitterding, Jr., sons of the testator, and Virginia Trust Company qualified as executors and trustees thereunder.

The testator left surviving him three children, Agnes, Fred B., Jr. and William, and three grandchildren, Frederick B., III, Mary Elizabeth and Agnes, children of Fred B., Jr., all of whom were in being when the will was executed.

The testator's estate was appraised at approximately $2,700,000. After making two specific bequests of personal property, one to his daughter, Agnes, and the other to a grandson, and providing for the trust fund of $300,000, he left the bulk of his estate to his three children. The value of the principal of the trust estate, in October 1973, was approximately $1,576,000.

The following chart may be of assistance:

At the time *Gasque* was decided, testator's daughter, Agnes, had died in 1959, unmarried and without issue; Fred B., Jr. had died in 1961, survived by his three children, the testator's grandchildren; and William, age 76, was living, married and without issue.

Upon the testator's death in 1928, his three children became entitled to and were paid the quarterly distribution of income of the trust. After the death of Agnes, testator's daughter, in 1959, the testator's surviving children, Fred., Jr. and William, thereafter became entitled to and were each paid one-half of the quarterly distribution of income. Upon the death of Fred, Jr., in 1961, his three children became entitled to and were paid their father's share in the quarterly distribution of income.

Mary Elizabeth Sitterding, granddaughter of the testator, died testate in 1964, unmarried and without issue. In her will, she bequeathed her entire interest in the estate left by her grandfather to her niece Cecelia Anne Maiorano (now Valentine), the daughter of Agnes Sitterding Maiorano. Thomas N. Gasque qualified as the executor of the will of Mary Elizabeth. William Sitterding and Virginia Trust Company, surviving Trustees under the will of Fritz Sitterding, refused to pay to Gasque, for the benefit of Cecelia Anne Maiorano, one-sixth of the trust income. That refusal gave rise to *Gasque.*

In *Gasque,* we confined our consideration of this will to the question: "Who are the beneficiaries entitled to the present *enjoyment* of the *income* from the trust fund?" 208 Va. at 213, 156 S.E.2d at 581. We held that the issue of Fred B. Sitterding, Jr., namely Frederick B. Sitterding, III, Mary Elizabeth Sitterding and Agnes Sitterding Maiorano, received under the testator's will "a vested interest in

a share of the income of the trust created under the said will," and that Mary Elizabeth's right to receive one-third of one-half of "said income did not terminate at her death; but was a property right which she could and did bequeath to Cecelia." 208 Va. at 213, 156 S.E.2d at 582. We concluded, therefore, that Cecelia Anne Maiorano, Frederick B. Sitterding, III, and Agnes Sitterding Maiorano were each entitled to "the present right and possession" of one-third of one-half of the said income.

Subsequent to *Gasque*, William died in 1972, without issue. Also, the Internal Revenue Service assessed the Estate of Mary Elizabeth with additional federal inheritance taxes. It based this assessment on its conclusion that both the income and principal of the trust had vested in the interested parties, including Mary Elizabeth and Cecelia. That claim was eventually compromised and settled.

The present suit by Virginia Trust Company, the surviving Trustee, for aid and guidance ensued in 1973. Joined as defendants were Frederick B., III, and Alma, his wife; Frederick B., IV, Patricia Ann and Lillian, children of Frederick B., III; Agnes Sitterding Maiorano and Michael, her husband; Cecelia Anne; Gasque, Executor of the Estate of Mary Elizabeth; and the unborn Issue of Fritz Sitterding.

The Trustee sought the aid and guidance of the chancellor in determining (1) whether at the death of William a part of the share in the income theretofore payable to him became payable to Cecelia, as beneficiary under the will of Mary Elizabeth, and (2) whether certain attorney's fees incurred by Cecelia, in connection with the foregoing estate tax assessment on account of her interest in the trust, might properly be paid by the Trustee out of her share of the principal of the trust. The need to determine the time of vesting of the trust principal thus sprung from the second inquiry. The immediate distribution of the principal was not at issue.

The chancellor held, in the final decree entered July 2, 1974, which incorporated his written opinion, first, that, at the death of William, Cecelia became entitled, as beneficiary under the will of Mary Elizabeth, to receive one-third of the share in the income which William had been receiving from the trust, until 21 years after the death of William; and that at each quarterly distribution thereof, the income of the trust be divided in equal shares among Frederick B., III, Agnes, and Cecelia, their personal representatives and assigns. This ruling of the trial court is not attacked on appeal and is final.

Second, the chancellor was of the opinion that "no interest in the principal will vest until twenty-one (21) years after the death of the last to die of the three children of Fritz Sitterding, at which time it will be distributed among the issue of Frederick B. Sitterding, Jr., the only one of the said children leaving issue." Accordingly, he decreed that, "at the expiration of twenty-one (21) years after the death of William Sitterding, the principal of the trust be divided, *per stirpes*, among the issue of Frederick B. Sitterding, Jr., who then survive." [1]

We awarded an appeal to Agnes, Michael, Cecelia and Gasque, the Executor of Mary Elizabeth's estate, hereinafter appellants, the only defendants who sought an appeal. The guardian *ad litem* for the Unborn Issue of Fritz Sitterding, hereinafter appellee, appeared in place of the Trustee, on appeal, to sustain the position of the parties he was appointed to represent.

The broad question, as we have said, involves the time of vesting of the principal of the trust under article THIRD of the will. The appellants consolidate their assignments of error and state the issue as follows: Did the trial court err "in decreeing that Frederick B. Sitterding, III, Agnes Sitterding Maiorano and Cecelia Anne Maiorano Valentine through the will of Mary Elizabeth Sitterding, did not have a vested interest in any part of the principal of the trust fund; that for the present the aforesaid parties have no claim to the principal of the trust fund; that only the interested parties who survive the time of distribution will have any interest in the principal and that only the issue of Frederick B. Sitterding, Jr., living 21 years after the death of William Sitterding will have a vested interest in and will be entitled to share in the distribution of the principal of the trust"? We hold that the chancellor did not err and affirm.

The appellants contend that the trial court's decree is contrary to the clear intent of the testator as expressed by the language of his will. They assert that the principal vested, as stated during argument at the bar, at the "death of the testator's three children." They argue that article THIRD (d) creates only one class, "the issue of my three children," and that as each child died, "the class closed and the vesting could take place at that time." They urge that when William died leaving no issue, "the class of grandchildren was forever closed and

---

[1] The trial court also ruled that the Trustee pay out of the principal of the trust attorney's fees and expenses incurred in the handling of the estate tax deficiency claim asserted against the Estate of Mary Elizabeth and against Cecelia. No error was assigned to this ruling, although the appellants argue that such a finding is inconsistent with the main holding of the court below that the principal had not vested.

consisted of [Frederick, III and Agnes] who were at the time living and Mary Elizabeth Sitterding who had died before William." They say the testator merely delayed the time such issue would enjoy possession of the principal, namely 21 years after the death of his last child, and not its vesting.

They further argue that if, "in ascertaining the members of this class we are to be limited to the issue *living* at the time of distribution twenty-one (21) years after the death of [William], the Court must read into the will, words of survivorship which the testator did not use, that is, the language of [article THIRD (d)] of the will must be changed to read,

> At the expiration of the period of twenty-one years after the death of the last survivor of my children, I direct that the said trust fund should be divided per stirpes among *the then living* issue of my three children."

In addition, the appellants contend, the decree below is not only contrary to the clear intent of the testator, but it is also contrary to established Virginia rules of construction "favoring early vesting of estates and the early ascertainment of members of a class."

We reject the contentions of the appellants. The will, as written, is clear and unambiguous as to the vesting of the principal of this trust. Because we find the meaning of the words plain, it is not necessary to consider any rule of construction, such as the rule favoring early vesting of estates. *Gasque, supra*, 208 Va. at 210-11, 156 S.E.2d at 579-80. When, as in this case, the intention to postpone the vesting of an estate is clearly indicated by the will, that intent must be given effect. *Boyd* v. *Fanelli*, 199 Va. 357, 360-61, 99 S.E.2d 619, 622 (1957). *See Griffin* v. *Central National Bank*, 194 Va. 485, 488-90, 74 S.E.2d 188, 190-91 (1953). We, therefore, interpret the will in accordance with these established rules, ascertaining the testator's intent from the language he used in the will.

We hold that the principal of the trust vests under article THIRD (d) "[a]t the expiration of the period of twenty-one years after the death of [William Sitterding]", at which time it will be divided, *per stirpes*, among the issue of Frederick B. Sitterding, Jr. who then survive. The testator twice declared in article THIRD in clear and plain language that the trust fund should be held until "the expiration of twenty-one years after the death of the last survivor of"

his children. Neither construction nor extrinsic evidence is necessary to ascertain the intent of the testator as expressed in those unambiguous words.

At this point, it is important to remember what we said in *Gasque* concerning article THIRD of this will: "In it the testator disposed of the income from the trust quite differently from his disposal of the principal both as to the time of distribution and as to the beneficiaries." 208 Va. at 211, 156 S.E.2d at 580. We also stated that in paragraph (d) the testator "directed the time when and to whom the *principal* of the trust fund shall be distributed upon the termination of the trust." *Id.*

In order to point up the foregoing difference, we must review our analysis in *Gasque* of paragraph (c), which directed the time when and to whom the *income* of the trust fund should be distributed. There we decided that the testator designated a class of persons, his children, to receive immediately the trust income; then upon the death of any one of his children leaving issue, a new class, that is the deceased child's "issue", was established to receive the parent's share of the income from the trust estate; as the income interest of the parent terminated, the income interest of that parent's issue vested and commenced. The appellants contend for the same result with reference to the vesting of the principal. But, as the appellee argues, if "the testator had intended the concomitant vesting of principal, he would have used the same language." Yet he did not.

For example, in the second sentence of paragraph (c), the testator used the word "issue" when referring to the vesting of income at the death of the testator's children. This was a clear reference to his grandchildren, and we so held in *Gasque.* 208 Va. at 211-12, 156 S.E.2d at 580. But in paragraph (d) he used the additional language *per stirpes* when referring to the vesting of principal. He specified that the principal be "divided per stirpes among the issue of my three children." This is a clear reference to the future beyond the lives of his grandchildren, who were in being when the will was executed. It manifests an intent to insure that one-ninth of his estate would remain unalienated within his family and that remote descendants would be provided for. It is an obvious effort to vest the principal in a different manner from the income. It is true that we rejected in *Gasque* the argument that the use of the words "issue" and *"per stirpes"* manifested an "intention to limit the benefit of the trust strictly to future generations of his issue." 208 Va. at 213, 156 S.E.2d at 581. But

we reiterate that in *Gasque* our consideration of the will was carefully and strictly confined to the subject of income and not principal.

Another example of the difference between the income-giving and principal-giving provisions of the will is that in paragraph (c) the testator provided for the possibility of lapse and a gift over in the event of lapse, whereas no such provision is contained in paragraph (d) and there is no distinction made between grandchildren, great grandchildren, or great-great grandchildren.

It is, therefore, obvious that the testator, by the use of different language in specifying the vesting of income and in directing the vesting of principal, had in mind a different result to be accomplished, *Rennolds* v. *Branch*, 182 Va. 678, 693, 29 S.E.2d 847, 852-53 (1944), and that result was a postponement of vesting of the principal beyond the time when the income vested.

But it is not necessary to rely only upon a difference in language between paragraphs (c) and (d) to find the testator's intention to postpone vesting and his intention not to vest the principal either at his death, as the appellants contend in portions of their brief, or at the death of each of his children, as they contend in oral argument. In the residuary clause of his will, article FOURTH, the testator provided:

> "FOURTH: All the balance of my estate I give, devise and bequeath to be equally divided among my three children. In the event that any of my children shall predecease me, leaving issue surviving, then I direct that the share of the child so dying shall go to his or her issue."

He disposed of the bulk of his sizeable estate in this clause. He there used the word "issue", and not the qualifying language *"per stirpes"* employed in article THIRD (d), when he intended that the issue of any children who predeceased him would be determined at his death. Therefore, if under article THIRD (d) the testator intended that the trust principal would vest at his death, as argued by the appellants, the use of *"per stirpes"* would be superfluous and of no effect.

Furthermore, in article SECOND of the will, he used the word "grandson" when making a specific bequest to him. He could have used "grandchildren" in article THIRD (d) to define the class of principal beneficiaries, but he used "issue *per stirpes.*" The logical conclusion, therefore, is that he did not intend to restrict the class of

principal beneficiaries, but he intended a great grandchild to take, in the event a grandchild died before the date of trust distribution, rather than a third party legatee under the grandchild's will.

Accordingly, we find that the testator intended that principal vest, not at his own death or at the death of his children, but 21 years after the death of the last survivor of his children.

The appellants argue that qualifying words of survivorship, "the then living" issue, must be added to paragraph (d) in order to sustain the decision below. But this condition of survivorship is already manifested by use of the words *"per stirpes,"* so there is no need to read additional language into the will to support an interpretation of later vesting.

Finally, we have considered the cases relied on by the appellants and, except for *Gasque,* the language of the wills in each is clearly distinguishable. And in *Gasque,* as we have said, the interpretation of paragraph (d) was not in issue.

For the foregoing reasons, the decree of the trial court is

*Affirmed.*