# WILLIAM H. CLARK, JR., ET AL.

## V.

# ALICE PORTER STROTHER, ET AL.

Record No. 880889

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* Whiting, and Lacy, JJ.

---

* Justice Thomas participated in the hearing and decision of this case prior to the effective date of his resignation, November 1, 1989.

*Mary E. Cox* for appellants.
*Richard A. Dulaney (Niles, Dulaney & Parker*, on brief), for appellees.

Justice Compton delivered the opinion of the Court.

In this controversy involving future interests in real estate, we must construe a will to determine the nature of a remainder inter-

est, including the time when such remainder interest became vested.

The following chart states many of the pertinent facts and shows, as appropriate, dates of birth (b.) and death (d.). The names of the parties to this proceeding are italicized and designated plaintiff (P) or defendant (D) to indicate their position in the trial court.

HENRY PORTER (Will - 3/18/1913)
d. 1930
(Elizabeth W. Porter)
d. 1960

Lucy Maud Porter Reed
d. 1955

Carroll H. Porter
d. 1966

Charley Hermon Porter
d. 5/11/86

Mary P. Keiser
b. 1911 - d. 12/31/86

(P) *Alice P. Strother*
b. 1912

Edith P. Clark
b. 1910 - d. 1983

(P) *Thomas L. Keiser*

(P) *Mary L. Keiser*

(P) *Lucy K. Lewis*

*(D) Wm. H. Clark, Jr.*
*((D) Gail C. Clark)*

The dispute concerns approximately 19 acres of real estate in Culpeper County designated as "Lot No. 2" in "Item 2" of the will of Henry Porter executed March 18, 1913. The pertinent provisions of the will follow:

"I, Henry Porter, being in sound state of body and mind, but knowing the uncertainty of this transitory life, do make this as my last will and testament:

Item 1. I give unto my daughter Lucy Maud, wife of Walter Reed, my house and four acres of land . . . , to have and to hold during her life, and at her death to go to her child or children·if there be any; if she leave no child then the property shall go to her two brothers or to their children. She may not mortgage this property. She may not sell this property except to one of her brothers, my sons.

Item 2. I give to my son, Charley Hermon Porter, Lot No. 2 according to enclosures and stones set to mark the boundary, . . . to have and to hold during his life and to be left to his children under the same conditions as those specified in 'Item 1.'

Item 3 I give to my eldest son, Carroll H. Porter, Lot No. 3 . . . , to have and to hold under the same conditions as those specified in Items 1 and 2.

Item 4 I give to my widow, Lizzie W. Porter, the tract of eleven acres at Norman, with the dwelling-house and other buildings thereon as her dower during her natural life and afterward to be divided equally between my children or their heirs. This property may not be sold; except that one child may sell his or her interest to another child.

Item 5. The twelve acres of land, now in woods, recently bought of Perry and Biggers, and the four acres of woodland on the Jeffries' Hill Road I leave as wood-lots from which the widow and the children, above mentioned, may get fire-wood to burn but not to sell any.

These wood-lots may be divided among the children after the death of the widow, but must remain in growing timber.

Item 6. All of my personal property, . . . I leave to my widow Lizzie W. Porter: The children to have use of the personal property during her life, and to be divided between them at her death.

Item 7. I appoint my son Carroll H. Porter as my administrator to carry out the provisions of this will.

Witness my hand and seal, this 18th day of March 1913.

his<br>
Henry   x   Porter        (SEAL)<br>
mark"

In 1987, appellees Alice Porter Strother, Thomas Leonard Keiser, Mary Louise Keiser, and Lucy Keiser Lewis filed a motion for declaratory judgment against appellees William Henry Clark, Jr., and Gail Clark, his wife, seeking the construction and interpreta-

tion of the testator's will probated in the clerk's office below in 1930. After reciting the undisputed facts comprising the Porter family tree, the plaintiffs focused on Item 2 of the will.

They pointed out that defendant William Henry Clark, Jr., is the only son of Edith Porter Clark, who died testate in 1983. Edith predeceased her father, who died in 1986 survived by his grandson as his sole heir at law. Gail Clark was joined as a party defendant because of any contingent dower right she may have in the property in question.

The plaintiffs asserted that the testator died seized and possessed of Lot 2, which he left to his son, Charley Hermon Porter, for his life. According to the allegations, the lot would pass at Charley's death "to his child or children if there be any; and if he left no child then the remainder interest in the subject lot" was left by the testator to Charley's sister, Lucy Maud, and to the other brother, Carroll H. Porter, or to their children.

The plaintiffs further asserted that a controversy existed because defendant Clark, who has collected rents and profits from the subject property since the death of his grandfather, claims that the remainder interest vested in him upon the death of his mother in 1983, notwithstanding the fact that Edith died before her father and notwithstanding the fact that her father left no child surviving at his death.

The plaintiffs also asserted that plaintiff Alice Porter Strother is the sole surviving child of her father, Carroll, who had four children, and that plaintiffs Thomas Leonard Keiser, Mary Louise Keiser, and Lucy Keiser Lewis are the sole heirs at law of Mary Porter Keiser, who was also a surviving child of Carroll at the time of Charley's death.

The plaintiffs asked the court to determine whether the plaintiffs or the defendant William H. Clark, Jr., own the fee simple interest in the lot. The plaintiffs also asked for an accounting from Clark for the rents and profits, if the court ruled in their favor.

Responding, the defendants asked the court to construe the will and to rule that Clark was the fee simple owner of the subject property. Defendants asserted the testator intended that his property pass to his children "within his lineage," i.e., that his children, grandchildren, great grandchildren, etc., enjoy the realty he had acquired during his lifetime. Defendants alleged that the remainder interest in the subject property vested in Clark "as of the date of the death of Edith M. Clark on June 19, 1983." Further,

defendants argued that Edith's death before her father's "is irrelevant" in light of the testator's "clear intent" to "create a lineage."

The trial court considered the pleadings, exhibits, and argument of counsel, the parties agreeing that parol evidence was unnecessary to ascertain the testator's intent. The court ruled that there is no ambiguity in the will and that the testator's intent is "clear." The court decided that the testator intended "the fee simple remainder interest in the subject property to vest upon the death of the life tenant Charlie Hermon Porter in any child of Charlie Hermon Porter alive at the death of Charlie Hermon Porter, and in the alternative if no child of Charlie Hermon Porter survived him, then in the surviving children of Lucy Maud Porter, and/or, Carroll H. Porter."

Consequently, the court ruled, "the fee simple owners of the subject property upon the death of Charlie Hermon Porter became Alice Porter Strother as to an undivided one-half interest and Mary Porter Keiser as to an undivided one-half interest." The court added, "Not only does the clear language indicate this to be the intended disposition, but it is consistent with a reasonable and apparent testamentary scheme of favoring descendents of the closest degree."

This ruling was incorporated in a March 1988 order. Later, following an evidentiary hearing on the accounting question, the court entered final judgment in favor of the plaintiffs in May 1988, from which we awarded the defendants this appeal.

On appeal, the defendants contend the trial court erred in construing the will in a manner which defeats the testator's desire to distribute his property "among his beneficiaries and heirs." Defendants argue that the trial court erroneously looked to the death of Charley Porter, the life tenant, to determine when the remainder interest vested under Item 2, rather than looking to the testator's death to make that determination.

Defendants argue that when the will was drafted the testator knew certain specific facts which had special meaning and importance to him: he had two sons and a daughter; his daughter, though married, was childless; his son, Charley, had a daughter; and his son, Carroll, had four children. According to defendants, the importance of these facts is clearly expressed in the provisions of the will.

Referring to Item 1, defendants say the testator "desired and hoped that his daughter would give birth to a child or children

who would inherit a share of what he . . . had acquired during his lifetime." Continuing, defendants argue that if the testator's hope for his daughter was not realized, he made provision "for his acquisitions to remain in his lineage" by providing that "if she leave no child then the property shall go to her two brothers [or to] their children" and that, "She may not sell this property except to one of her brothers, my sons." Defendants contend the clause "and at her death . . . to her child or children if there be any," is clearly not a statement "that we look to [the] life tenant's death to see if children exist."

Referring to Item 2, defendants argue that, unlike the foregoing clause in Item 1, the provision to Charley stated, "to be left to his children under the same conditions as those specified in 'Item 1.'" Implicit in defendants' argument is that the "conditions" referred to in Item 2, that were contained in Item 1, merely were the directions against mortgage or sale of the property. Additionally, say defendants, the fact that the testator did not repeat in Item 2 the words "child or children if there be any," but merely said, "to his children," evidenced his knowledge that Charley had a daughter who could, in accord with his intention, inherit the remainder interest which was the subject of Item 2.

Thus, defendants argue, when the testator died, his son, Charley, received a life estate in the subject property and Edith received a vested remainder in the same property. Defendants say that the testator intended Edith to take possession of the property upon the death of her father and nothing in the will reveals any intent that vesting of the remainder interest was to be postponed until Charley died. Defendants comment that Edith's death before Charley's is "inconsequential."

We agree with the defendants' contention that the remainder interest vested at the testator's death, rather than at the life tenant's death. We do not agree, however, with their argument that defendant William H. Clark, Jr., became the fee simple owner of the subject property.

The cardinal principle of will construction is that the intention of the testator controls; the problem is to ascertain it. When testamentary intent is apparent on the face of the will, the court will not indulge in presumptions or invoke canons of construction. *Griffin* v. *Central Nat'l Bank*, 194 Va. 485, 488-89, 74 S.E.2d 188, 190-91 (1953). In other words, when the meaning of the words in the will is plain and the testator's intention is clearly

indicated, it is unnecessary to consider, for example, either the presumption that the testator used words of survivorship to refer to his own death rather than the death of the life tenant, *see id.* at 489, 74 S.E.2d at 191, or the rule favoring early vesting of estates. *See Maiorano* v. *Virginia Trust Co.*, 216 Va. 505, 510, 219 S.E.2d 884, 887 (1975).

■ "Cases construing remainders created by wills are almost as countless as grains of sand on the seashore." *James* v. *Peoples Nat'l Bank*, 178 Va. 398, 404, 17 S.E.2d 387, 389 (1941). And, while precedents may be informative in the area of will construction, they do not have the same controlling force accorded them in the interpretation of other written instruments because no two wills are alike. *Griffin*, 194 Va. at 489, 74 S.E.2d at 191.

■ Turning to the will, we conclude, like the trial court, that the testator's intention is clear. Upon consideration of the entire will and the words used to express that intention, a well-structured testamentary plan unfolds. In 1913, when the will was drawn, the testator knew of the birth of at least three grandchildren: Mary, Alice, and Edith. He anticipated that his childless daughter would bear a "child or children," as indicated in Item 1. Therefore, the testator's words demonstrate a plan to assure that his closest descendents, his children and grandchildren, would inherit his properties. This was accomplished in the following manner.

In Item 1, Lucy Maud was given a life estate which, at her death, would "go to her child or children if there be any." If, however, she did not "leave" a child, then the property would "go to her two brothers or to their children." The daughter was not to mortgage the property or sell it, except to one of her brothers. Thus, Item 1 carefully assured that the house and four acres descended to those in the closest degree of relationship to the testator.

■ In Item 2, the focus of this dispute, the testator's son, Charley, was given a life estate in Lot No. 2, "to be left to his children under the same conditions as those specified in 'Item 1.' " Incorporated into Item 2 by that reference were the conditions of Item 1. The "conditions" included, not only the restrictions against mortgage and sale, but also the conditional nature of the gift over. This is because it is necessary to refer to Item 1 to determine, under Item 2, how the property is to be "left." And, under Item 1, if Charley "leave" no child, then the property shall go to his brother or sister or to their children.

This brings us to the crucial issue in this case: What did the testator mean when he wrote, if one of his children "leave" no child? Did this merely refer to the birth of a grandchild, irrespective of whether the grandchild would survive the life tenant, or did it mean the birth of a grandchild who would outlive the life tenant?

We accord the verb "leave" its commonly accepted meaning: "to have remaining after one's death or extinction." Webster's Third New International Dictionary 1287 (1981). Therefore, because Edith predeceased Charley, there was no child remaining after Charley's death. In other words, Charley did not "leave" a child. Thus, the property passed to the life tenant's brother, Carroll, who was the testator's only surviving child at Charley's death.

Accordingly, we hold that the remainder interest in Lot 2 vested at the time of the testator's death in any child or children of Charley, subject to being divested out of each vested remainderman by his or her death before the life tenant and vested in the testator's other child or children. In discussing conditions precedent and conditions subsequent, Professor Minor states: "If the words importing contingency are a part of the description of the remainderman, the remainder is contingent. If, on the other hand, the words of contingency describe an event, the happening of which is to take away from the remainderman an interest, which in the absence of such event he would retain, the remainder is vested subject to be divested." 1 *Minor on Real Property* § 713 at 932-33 (Ribble ed. 1928) (footnote omitted). *See Rennolds* v. *Branch*, 182 Va. 678, 685, 29 S.E.2d 847, 849 (1944); *Sellers* v. *Reed*, 88 Va. 377, 380, 13 S.E. 754, 755 (1891). Here, the word of contingency, "leave," describes an event, that is, the death of the life tenant without a surviving child. The happening of that event took away Edith's interest as a vested remainderman.

The balance of the will follows the foregoing testamentary scheme. In Item 3, Carroll was given Lot 3 under the same conditions specified for the testator's other two children. In Item 4, similar provisions were made for the widow; the property eventually was to be divided among his children and their heirs with a restriction on sale of the land. In Item 5, the plan likewise was followed with reference to the "wood-lots." In Item 6, the plan of division among the testator's children was followed regarding personalty.

■ For these reasons, we conclude that the trial court erroneously decided that vesting of the remainder interest was postponed beyond the testator's death, to vest at the death of the life tenant. Nevertheless, and because the devise was a remainder which vested at the testator's death but was divested by the happening of a condition subsequent, we conclude that the trial court correctly determined that defendant William H. Clark, Jr., did not acquire any interest in the subject property and that Mary P. Keiser and Alice P. Strother each acquired a vested remainder in one-half of the property in fee. Hence, the judgment below will be

*Affirmed.*